**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD ALAN AIELLO, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 11-69 |
| | ) | |
| | ) | Judge Joy Flowers Conti/ |
| vs. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| BRIAN COLEMAN, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus (the "Petition") filed by

Petitioner Ronald Alan Aiello ("Petitioner" or "Aiello") be denied and that a certificate of

appealability be denied because reasonable jurists could not conclude that a basis for appeal

exists.

### II.    REPORT

Petitioner, an inmate incarcerated in the State Correctional Institution at Fayette,

Pennsylvania, brings this Petition in accordance with 28 U.S.C. § 2254.  He challenges his

conviction of one count of criminal homicide, 18 Pa.C.S. § 2501 on August 21, 2001, in the

Court of Common Pleas of Allegheny County, Pennsylvania at No. CC 200007117.  Following

the non-jury trial, Petitioner was sentenced to life imprisonment.  The charge arose out of the

April 14, 2000 murder of Lauren Phillips, the wife of Petitioner.

Petitioner raises seven specific claims in the Petition.  For the reasons that follow, Claim

Nos. 1, 5 and 8 have not been exhausted and/or are procedurally barred from review.  The

remaining claims, Claim Nos. 2, 3, 4, 6, 7 and 9, are exhausted and should be denied on the merits.

### A. Background

#### 1. Procedural History

On August 20, 2001, Petitioner came before the Honorable Jeffrey A. Manning, pled not guilty to the charge of criminal homicide, and waived his right to a jury trial.  (TT 9-11.)  The non-jury trial commenced that day.  The Commonwealth of Pennsylvania (the "Commonwealth") was represented by Allegheny County Assistant District Attorney Mark Tranquilli, and Petitioner was represented by Louis W. Emmi, Esquire.  On August 21, 2001, at the close of the Commonwealth's case, Judge Manning denied a defense motion for judgment of acquittal.  (TT 231-32.)  On August 23, 2001, following closing arguments, Petitioner was found guilty of murder in the first degree.  (TT 321.)  Petitioner immediately was sentenced to a term of life imprisonment.  (TT 322.)

Petitioner filed a pro se notice of appeal on September 26, 2001.  (Answer Ex. 3 at 26.) On May 14, 2002, Judge Manning appointed the Office of the Allegheny County Public Defender to assist Petitioner in his appeal.  On May 24, 2002, Christine H. Nooning, Esquire, of the Office of the Public Defender, filed an Amended Notice of Appeal on behalf of Petitioner.

In his appeal to the Pennsylvania Superior Court, docketed at No. 1683 WDA 2001, Petitioner raised two arguments as grounds for appeal.

I.  BY APPLYING AN INCORRECT LEGAL STANDARD FOR
    PROVOCATION AND BY MISJUDGING WHEN MR. AIELLO WAS
    THROWN INTO HIS "UNCONTROLLABLE RAGE," THE LOWER
    COURT ERRED BY DISCOUNTING A VOLUNTARY
    MANSLAUGHTER VERDICT AND A NEW TRIAL, THUS, SHOULD BE
    GRANTED.

A. Provocation for voluntary manslaughter must include words that, in the context of preceding events, causes a person to be thrown into an uncontrollable rage.

B. Because Mr. Aiello was not in a rage before he entered the house and he attacked Ms. Phillips immediately after she threw him into his rage, the evidence was insufficient to prove that Mr. Aiello had cooled before being thrown into an "uncontrollable rage[."]

II. THE EVIDENCE IS INSUFFICIENT TO PROVE A SPECIFIC INTENT TO KILL BECAUSE THE NATURE OF THE WOUNDS AND MR. AIELLO'S CONDUCT DOES NOT LEND ITSELF TO A PRESUMPTION OF INTENT, BUT INSTEAD DEMONSTRATES A LACK OF INTENT TO KILL.

(Answer Ex. 5 at 38.) Judge Manning issued the Opinion of the Court on May 7, 2003. (Answer Ex. 4 at 31.) Kirk Henderson of the Office of the Public Defender filed a brief on behalf of the Petitioner on September 29, 2003. (Answer Ex. 5.) Assistant District Attorney Sandra Preuhs filed the Commonwealth's brief on October 14, 2003. (Answer Ex. 6.) Petitioner subsequently filed a reply brief on November 13, 2003. (Answer Ex. 7.) The Superior Court affirmed the judgment of sentence in a Memorandum Opinion dated February 27, 2004, finding that Petitioner's first claim was waived and that there was sufficient evidence to support the determination that he possessed the specific intent to kill. (Answer Ex. 8.)

Petitioner, through Attorney Henderson, filed a timely Petition for Allowance of Appeal to the Pennsylvania Supreme Court on March 29, 2004, which was docketed at No. 168 WAL 2004. (Answer Ex. 10.) He presented the three claims for review.

I. This court should grant allowance of appeal to determine whether preserved trial court issues not raised in a Rule 1925(b) Concise Statement must be deferred until post-conviction review or whether they can be raised on direct appeal because the language of Commonwealth v. Grant only applies to trial ineffectiveness.

II. This court should determine whether facts that are more consistent with an intent <u>not</u> to kill the victim could lead to the conclusion that the defendant had the requisite intent to kill necessary for first-degree murder.

III. This court should grant allowance of appeal to decide whether angry, hurtful, insulting, combative, emotional words can cause sufficient provocation to reduce a homicide to voluntary manslaughter and whether the lower court erred in determining when Mr. Aiello's uncontrollable rage began.

(Answer Ex. 10 at 166.)  The Supreme Court of Pennsylvania denied the Petition for Allowance of Appeal on August 27, 2004.  (Answer Ex. 11.)

Acting pro se, Petitioner subsequently filed a petition pursuant to the Post Conviction Relief Act, 42 Pa. C.S. §§ 9541-46 ("PCRA") on October 5, 2004.  (Answer Ex. 12.)  By order dated January 1, 2005, the trial court appointed Kenneth A. Snarey, Esquire, to represent Petitioner in the PCRA proceeding.  (Answer Ex. 13 at 230.)  He filed a petition to appoint a psychiatrist on March 31, 2005, which was denied on March 2, 2006.  Attorney Snarey filed an amended PCRA petition on April 4, 2006.  Petitioner raised six claims in the amended PCRA petition.

(1) Direct appeal counsel was [ineffective]—in violation of Defendant's rights under Article I, Section 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendment[s] to the United States Constitution—for failing to preserve the issue of whether trial counsel was ineffective—in violation of said rights—in failing to investigate a diminished capacity defense;

(2) Direct appeal counsel was ineffective—in violation of said rights—for failing to preserve the issue of whether trial counsel was ineffective—in violation of said rights—for failing to investigate, and advise Defendant of procuring and presenting an expert witness who would testify with respect to whether the Defendant was acting in the "heat of passion" when he committed the killing;

(3) The PCRA court erred and/or abused its discretion in denying Defendant's motion for appointment of an expert to investigate and articulate Defendant's diminished capacity and heat-of-passion defenses;

(4) Direct-appeal counsel was ineffective—in violation of said rights—in failing to preserve the issue of whether trial counsel was ineffective—in violation of said rights—for failing to call witnesses who would have testified as to Defendant's reputation in the community for non-violence and truthfulness;

(5) Direct-appeal counsel was ineffective—in violation of said rights—in failing to preserve the issue of whether trial counsel was ineffective---in violation of said rights—for failing to preserve the issue of whether the Court of Common Pleas erred by applying the incorrect legal standard for provocation and then misconstrued when the "uncontrollable rage" began; and

(6) Direct appeal counsel was ineffective—in violation of said rights—in failing to preserve the issue of whether trial counsel was ineffective—in violation of said rights—in failing to file a motion to suppress Defendant's April 14, 2000 taped confession to police because Defendant's cognitive ability was sufficiently impaired by alcohol and medication to preclude the knowingly, intelligently and voluntarily [sic] waiver of his <u>Miranda</u> rights.

(Answer Ex. 13 at 230-231.)  The Commonwealth filed an Answer to the PCRA petition on October 5, 2006.  (Answer Ex. 14.)

Judge Manning issued a Notice of Intention to Dismiss the PCRA petition on November 13, 2006, in which he indicated that: 1) Petitioner had not presented any facts establishing that he was suffering from mental illness or infirmity; 2) he presented no evidence in support of his heat of passion defense; 3) he failed to identify any character witnesses or the substance of their proposed testimony; 4) the claim that counsel failed to preserve an issue regarding the court's application of the incorrect legal standard for provocation was without merit because the court had applied the correct standard; and 5) the claim that counsel was ineffective for failing to preserve the issue regarding a motion to suppress Petitioner's confession was without merit because the record failed to support his contention that he was intoxicated.  (Answer Ex. 15.)

On November 21, 2006, Petitioner filed a Supplement to the Amended PCRA Petition in which he: 1) added the claim that counsel was ineffective for failing to preserve the claim that

the trial court erroneously relied upon the statement that he had violated a protection from abuse order ("PFA") when it was no longer in effect; and 2) contained certifications by several witnesses, including Joseph Iezzi and Harry McDonald as character witnesses. (Answer Ex. 16.) By order dated December 28, 2006, the PCRA court denied relief.

On January 26, 2007, Petitioner, through Attorney Snarey, filed a notice of appeal to the Pennsylvania Superior Court, which was docketed at No. 210 WDA 2007. He presented seven grounds for appeal.

A. Failure to Investigate Diminished Capacity Defense.

B. Failure to Obtain Expert Testimony on Heat of Passion.

C. Denial of Appointment of Psychiatric Expert.

D. Failure to Investigate Character Evidence.

E. Incorrect Standard for Provocation; Misconstrued Rage.

F. Erroneous Reliance on Unsupported PFA Violation.

G. Denial of PCRA Relief Without a Hearing.

(Answer Ex. 19 at 358.) The PCRA court did not file a separate opinion, but instead issued an order on February 2, 2007, stating that it was relying on its Notice of Intention to Dismiss dated November 13, 2006 to set forth reasons for denial of PCRA relief. (Answer Ex. 17.) Attorney Snarey filed a brief on Petitioner's behalf on March 13, 2007. (Answer Ex. 19.) The Office of the District Attorney filed the Commonwealth's brief on May 14, 2007. (Answer Ex. 20.)

On December 13, 2007, the Superior Court issued a Memorandum Opinion vacating the PCRA court's order denying relief and remanding the matter for clarification because the court had not fully addressed all issues raised by Petitioner before denying relief, specifically the

Supplement, which contained witness certifications and the additional issue concerning the PFA order. (Answer Ex. 21.)

In response to the Superior Court order, the PCRA court issued an opinion on February 19, 2008. (Answer Ex. 22.) However, the final order denying PCRA relief was not filed until December 12, 2008. (Answer Exs. 23 and 24.) On February 27, 2009, the trial court issued an order reinstating Petitioner's appellate rights nunc pro tunc due to the fact that Petitioner's counsel was not served with the December 12, 2008 order. (Answer Ex. 24.)

On March 6, 2009, Petitioner filed his notice of appeal to the Pennsylvania Superior Court. (Answer Ex. 25.) The appeal, docketed at No. 363 WDA 2009, raised the same issues presented in the prior, remanded appeal. (Answer Ex. 26 at 459.) Attorney Snarey filed a Brief for Appellant on the Petitioner's behalf on April 3, 2009 and the Allegheny County District Attorney filed the Commonwealth's Brief for Appellee on April 17, 2009. (Answer Exs. 26, 27.) The Superior Court affirmed the lower court's decision on August 20, 2009. (Answer Ex. 28.)

On August 28, 2009, Petitioner, through Attorney Snarey, filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was docketed at No. 429 WAL 2009. (Answer Ex. 29.) Petitioner presented only four issues for review.

1. Whether prior counsel were ineffective for failing to call, or litigate the absence of, character witnesses?

2. Whether prior counsel were ineffective for not preserving/litigating the error of applying the incorrect standard of provocation and misconstruing when the "uncontrollable rage" began?

3. Did the PCRA Court err[] in denying relief without a hearing?

4. Whether Superior Court erred in not remanding for Defendant to cure a pleading defect regarding the certifications regarding the character witnesses not identified in predismissal notice?

(Answer Ex. 30 at 587.)  The Supreme Court denied the Petition for Allowance of Appeal on

March 10, 2010.  (Answer Ex. 31.)

On January 19, 2011, Petitioner filed this Petition for Writ of Habeas Corpus (the

"Petition") (ECF No. 1).  Petitioner has raised the following nine claims in the pending Petition.

1. Did the trial court and the state courts violate the petitioner's right to a fair trial by denying the petitioner's claim in which petitioner alleged that the lower court sitting as factfinder, err[ed] when it applied the incorrect legal standard for provocation and then misconstrued when the uncontrollable rage began?

2. Did the trial court and the state court violate the petitioner's right to a fair trial by denying petitioner's claim in which petitioner alleged that, the nature of the wounds and the defendant's conduct are inconsistent with an intent to kill and instead shows lack of intent, has the Commonwealth proven a specific intent to kill?

3. Did the state court and trial court violate petitioner's right to a fair trial by denying petitioner's claim in which petitioner alleged that, direct appeal counsel was in violation of the defendant's rights under article I, section 9 of the Pa. Const. and the Six and Fourteenth Amend. to the U.S. Const. for failing to preserve the issue of whether trial counsel was ineffective in violation of said rights in failing to investigate a diminished capacity defense?

4. Did the trial court and the state courts violate petitioner's right to a fair trial by denying petitioner's claim in which petitioner alleged that, direct appeal counsel was ineffective in violation of said right for failing to preserve the issue of whether trial counsel was ineffective in violation of said rights for failing to investigate, and advise defendant of procuring and presenting an expert witness who would testify with respect to, whether the defendant was acting in the heat of passion when he committed the killing?

5. Did the trial court and the state courts violate petitioner's right to a fair trial by denying petitioner's claim in which petitioner alleged that, the PCRA court erred and/or abused its discretion in denying defendant's motion for appointment of an expert witness to investigate and articulate defendant's motion for diminished capacity and heat of passion when he committed the killing?

6. Did the trial court and the state courts violate petitioner's right to a fair trial by

denying petitioner's claim in which petitioner alleged that, direct appeal counsel was ineffective in violation of said rights for failing to preserve the issue of whether trial counsel was ineffective in violation of said rights for failing to call witnesses who would testify as to defendant's reputation in the community for non-violence and truthfulness?

7. Did the trial court and the state courts violate petitioner's right to a fair trial by denying petitioner's claim in which petitioner alleged that, direct appeal counsel was ineffective in violation of said rights for failing to preserve the issue of whether trial counsel was ineffective in violation of said rights for failing to preserve the issue of whether the Court of Common Pleas erred by applying the incorrect legal standard for provocation and then misconstrued when the uncontrollable rage began?

8. Did the trial court and the state courts violate the petitioner's right to a fair trial by denying petitioner's claim in which petitioner alleged that, direct appeal [counsel] was ineffective in violation of said rights for failing to preserve the issue of whether trial counsel was ineffective in violation of said rights in failing to file a motion to suppress defendant's April 14, 2000, taped confession to police because defendant's cognitive ability was sufficiently impaired by alcohol and medication to preclude the knowingly, intelligently and voluntarily [sic] waiver of his Miranda rights?

9. Did the trial court and state court violate the petitioner's right to a fair trial by denying petitioner's claim in which petitioner alleged that attorney Henderson was ineffective in violation of Article I, subsection 9 of the Pa. Const. and the 6th and 14th Amend. to the United States Constitution for failing to raise and/or preserve for review the claim that: the Court of Common Pleas violated defendant's right to due process of law under Article I subsection 9 of the U.S. Const. upon a surmised violation by defendant of a protection from abuse order and choosing to find defendant guilty of a degree of homicide greater than 3rd degree murder or voluntary manslaughter where there was insufficient evidence of such a violation, the commonwealth failed to establish such a violation beyond a reasonable doubt, and the evidence showed the victim withdrew the petition for protection from abuse and that such order was otherwise not in affect at the time of the subject stabbing?

(ECF No. 1, ¶ 13.)

The Commonwealth's Answer to the Petition for Writ of Habeas Corpus was filed on

March 17, 2011 (ECF No. 8). Petitioner filed a Response to Commonwealth's Answer (ECF No.

11) on May 24, 2011.

## 2. **Factual History**

The facts of the crime, as summarized by the trial court, are as follows:

The evidence presented at trial revealed that the Defendant and the victim, his wife, Lauren Phillips, had separated in July 1999, three weeks after the birth of their twin daughters. Following the separation, Lauren obtained a Protection From Abuse Order dated October 8, 1999. On the morning of April 14, 2000, in violation of the PFA, the defendant went to his wife's home. He was seen by a neighbor exiting the front door. The victim came to the door and yelled at the defendant to return her files or she would call the police. After she shut the door, the defendant was seen entering through a side door. A few minutes later, after victim was heard screaming, she staggered out the front door, covered in blood. She said, "He's trying to kill me", and collapsed on the ground. The defendant then exited the front door, also covered in blood. He ran to his car and drove off.

The victim was taken to Mercy Hospital where she died six days later. Forensic pathologist [Sean] Ladham testified as the cause of the victim's death. He said that she had suffered nine stab wounds. He described four wounds to the victim's head, including a deep stab wound to the head and three smaller wounds to the forehead, adjacent to the right eye and near the left eye. He also said that she had a through and through wound to her elbow that went through an artery, causing an arterial spurt and another through and through wound to the inside of her leg that also caused heavy arterial bleeding. He said that her death was caused by significant loss of blood.

An inspection of the crime scene revealed that the phone lines had been pulled out outside the house. The interior of the house was very clean and neat. There were not [sic] utensils or other similar objects lying around in the kitchen. A single drawer was open and a butcher knife was missing from the drawer.

The defendant was arrested at his home attempting to flee out the back door after the officers had knocked at the front door. He claimed that he had acted in self-defense when his wife came at him with a knife she was holding. Later, when he gave a taped statement, he said that while they were arguing over computer discs she said something to him that attacked his manhood. He pulled a knife out [of] the drawer and stabbed her. He only believed he stabbed her a few times.

At trial, the defendant again contended he had acted out of a sudden passion. He confirmed that they argued over computer discs and that when he left the house with them, his wife called after him that she was going to call the police. He went to the side of the house, pulled the phone lines out of the wall to prevent her from calling the police, and reentered the house through a side door.

He claimed that his wife struck him hard and told him that her boyfriend was a better man than him and was better sexually than him. He said that he "went into a rage—lost it". He grabbed the knife from a drawer and swung at her. He claimed not to know how many times he stabbed her.

(Answer Ex. 4 at 32-38.)[1]

## B. Discussion

### 1. <u>Exhaustion</u>

The first issue that must be addressed by a federal district court when considering a habeas corpus petition filed by a state prisoner is whether the prisoner has exhausted available state court remedies as required by 28 U.S.C. §§ 2254(b) and (c). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b).

---

[1] As explained below in the context of Claim No. 9, the trial court's reference to Petitioner's violation of a PFA was an error, but he fails to demonstrate that he suffered prejudice as a result of this error.

It is well-settled that, as a matter of comity, the state should be provided with the first opportunity to consider the claims of constitutional violations and to correct any errors committed in its courts. Rose v. Lundy, 455 U.S. 509, 518 (1981); Preiser v. Rodriguez, 411 U.S. 475 (1973). Accordingly, before a state prisoner's claims may be addressed by a federal habeas court, the constitutional issues must first have "been fairly presented to the state courts" for review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Both the factual and legal basis for the claim must have been presented to the state courts. Thus, the United States Supreme Court held that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 366 (1995).

## 2. **Procedural Default**

The United States Court of Appeals for the Third Circuit has stated that:

> As a matter of comity and federalism, a federal court cannot rule on the merits of a habeas petitioner's claims when a state court has found such claims to be procedurally defaulted pursuant to an independent and adequate state procedural rule unless the petitioner shows cause and prejudice for the default.

Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2008) (citing Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)). In addition, when habeas petitioners have not fairly presented their claims to the state courts and would be barred by a state procedural rule from seeking further relief, the claims cannot be reviewed because of this procedural default. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). In Lines, the petitioner had filed a direct appeal to the Pennsylvania Superior Court and a petition for allowance of appeal in the Pennsylvania Supreme Court. He then filed a PCRA petition and

after it was denied, he appealed to the Pennsylvania Superior and Supreme Courts. However, the Third Circuit Court of Appeals concluded that he had not "fairly presented" to the Pennsylvania courts any of the claims that he was presenting in his habeas corpus petition. Further, The Third Circuit Court of Appeals did not affirm the district court's dismissal of the federal habeas corpus petition on the ground that Lines had failed to exhaust available state court remedies and that he should file another PCRA petition. Rather, the Court of Appeals concluded that he had no more available state court remedies because the statute of limitations under the PCRA, 42 Pa. C.S. § 9545(b)(1), would prohibit him from filing any PCRA petition, including a second or subsequent petition, more than one year after the judgment becomes final unless certain exceptions are met, which did not apply to the case. The Court of Appeals noted that the Pennsylvania Supreme Court had held in <u>Commonwealth v. Banks</u>, 726 A.2d 374 (Pa. 1999), that the time restrictions under the PCRA are jurisdictional. 208 F.3d at 164 & n.17. The Court of Appeals concluded that "[w]hen exhaustion is futile because state relief is procedurally barred, federal courts may only reach the merits if the petitioner makes the standard showing of 'cause and prejudice' or establishes a fundamental miscarriage of justice." <u>Id.</u> at 166 (citation omitted). Because the petitioner failed to meet either exception to the procedural bar, all of his claims were procedurally barred from review and the court dismissed the petition with prejudice. <u>Id.</u> at 169.

In the case at issue, Respondents argue that Claim No. 1 was deemed waived by the Superior Court because Petitioner failed to include it in his statement of errors complained of on appeal, as required by Pa.R.A.P. 1925(b), that Claim No. 2 is unexhausted and procedurally defaulted because Petitioner raised it as an issue of federal law only to the Pennsylvania Supreme Court but not to the lower courts, and that Claim No. 8 is not exhausted and procedurally

13

defaulted because Petitioner raised it in his PCRA petition but not on appeal therefrom to the Pennsylvania Superior Court. Respondents' arguments are supported by the record with respect to Claim Nos. 1 and 8. See Answer Ex. 8 at 4 (Superior Court deemed Claim No.1 waived); Answer Ex. 13 ¶ 16(6), Ex. 19 at 2 (Claim No. 8 raised in Amended PCRA petition but not raised on appeal to Superior Court). Thus, Claim Nos. 1 and 8 are not exhausted and procedurally barred from review.[2]

With respect to Claim No. 2, Petitioner argues that there was a lack of evidence of specific intent to kill. Respondents contend that Claim No. 2 is procedurally defaulted because Petitioner only presented the issue as one of state law in the trial court and Superior court. We are not persuaded. In considering an insufficiency of evidence claim, the United States Court of Appeals for the Third Circuit has stated that "the test for insufficiency of the evidence is the same under both Pennsylvania and federal law." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1232 (3d Cir. 1992) (footnote omitted). Hence, because the test for sufficiency of the evidence is the same under both the law of Pennsylvania and under the United States Constitution, we reject Respondents' contention that Petitioner raised the "sufficiency of the evidence" claim solely as an issue of state law in the trial and Superior Courts. See Evans, 959 F.2d at 1232-33 (finding that although the petitioner therein raised the sufficiency of the evidence solely as a claim of state law, the federal due process claim of sufficiency of the evidence was also thereby presented and so exhausted). Thus, we do not find Claim No. 2 procedurally defaulted.

Even though we find that Petitioner has procedurally defaulted Claim Nos. 1 and 8, we

_____

[2] In his Response to the Commonwealth's Answer, Petitioner admits that Claim No. 8 is unexhausted and he does not discuss Claim Nos. 1 and 2 at all. (ECF No. 11 at 5.)

may yet address those procedurally defaulted claims on the merits if Petitioner comes within either of two exceptions to the procedural default rule. The two exceptions are: 1) cause and prejudice and 2) miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). We address those exceptions now. Petitioner has not argued that he can demonstrate "cause" for his procedural defaults, that he suffered "prejudice" therefrom, or in the alternative that he will suffer a "fundamental miscarriage of justice" if these claims are not heard. Moreover, he would not meet the standard necessary to satisfy either exception to the procedural default bar in any event.

The issue of cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Because Petitioner's counsel did not raise these issues or raised them inadequately, he cannot refer to any source external to the defense. Thus, he cannot establish the existence of "cause" to excuse the procedural default.

 Even where no cause or prejudice can be shown, a federal court may grant a writ of habeas corpus where failure to hear the claim would result in a miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 339 (1992). A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. Murray, 477 U.S. at 495-96; Hull v. Freeman, 991 F.2d 86, 91 n.3 (3d Cir. 1993). To meet this standard, the prisoner must show a fair probability that, in light of all the evidence, including that claimed to have been illegally admitted and that claimed to have been wrongly excluded or which became available only after trial, the trier of fact would have entertained a reasonable doubt of his guilt. Sawyer, 505 U.S. at 339 n. 5 (citing Kuhlmann v. Wilson, 477 U.S. 436, 454

n. 17 (1986)).  This exception is exceedingly narrow: "'To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'  Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'"  Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)).

In this case, Petitioner has not even alleged that he can meet the high burden of demonstrating a fundamental miscarriage of justice; indeed, he admits that he committed the crime and argues only that he did not possess the specific intent to kill necessary to find him guilty of first-degree murder.  Therefore, the Court will not reach the merits of these claims. Keller v. Larkins, 251 F.3d 408, 416 (3d Cir. 2001).

With respect to Claim Nos. 3, 4, 6, 7 and 9, Respondents concede that these claims are exhausted and address them on the merits.  Therefore, the Court will address the merits of Claim Nos. 2, 3, 4, 6, 7 and 9.

**3.  <u>Standard of Review</u>**

A petitioner is only entitled to federal habeas relief if he meets the requirements of 28 U.S.C. § 2254(d), which provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254(d) "firmly establishes the state court decision as the starting point in habeas review."  Hartey v. Vaughn, 186 F.3d 367, 371 (3d Cir. 1999).  This provision governs not only pure issues of law, but mixed questions of law and fact such as whether counsel rendered ineffective assistance.  Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

The United States Supreme Court has held that, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  The Court has also held that

> the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case.  In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced."  In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been "objectively unreasonable."

Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (other citations omitted)).  In other words, "the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citations omitted).

Section 2254(e) provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

### 4. **Sufficiency of the Evidence of Intent to Kill - Claim No. 2**

In Claim No. 2, Petitioner contends that he was denied a fair trial when the nature of the wounds and his conduct were inconsistent with an intent to kill. In other words, he challenges the sufficiency of the evidence to convict him of first-degree murder. He raised this claim in his direct appeal.

The United States Supreme Court has held that, in evaluating a federal habeas petitioner's challenge to the sufficiency of the evidence, the question for the court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

In addressing this claim in the case at issue, the Pennsylvania Superior Court held as follows:

> [Petitioner] next argues, "[w]hen the nature of the wounds and the defendant's conduct are inconsistent with an intent to kill and instead shows lack of intent, has the Commonwealth proven a specific intent to kill?" [Petitioner's] Brief at 5. [Petitioner] explains,
>
> > [s]pecific intent cannot be inferred from the injuries to the legs because they are not a vital part of the body. The non-fatal injuries to the head in this context also do not show intent to kill and are inconsistent with someone who wanted to commit murder. If [Petitioner] intended to kill [his wife], he would have done it earlier before he started to leave, he would have used a different weapon on her head, he would have stabbed her in a vital portion of her body, *i.e.*, the abdomen, he would have slit her throat when he held her head, he would have prevented her from fleeing to obtain help, or he would have chased her to finish the job.
>
> Id. at 17.

[Petitioner] argues essentially his failure to kill his wife outright, and the fact that she survived for six days following the brutal assault, is proof that he did not possess the specific intent necessary to sustain a first degree murder conviction. He stabbed her in the arms and legs, non-vital parts of the anatomy, and two of the four knife wounds to the victim's head were "superficial." [Petitioner's] brief at 38-39. [Petitioner] posits that if he were trying to kill his wife, he would have used another weapon; i.e., a hammer or a gun. Id. at 39-40. "[I]nstead of making sure she was dead, [Petitioner] stopped his attack when [his wife] screamed and he allowed her to get up off the floor, run away out of the house and to a neighbor's without pursuing her." Id. at 40.

***

The trial judge, sitting as the trier of fact, determined from the totality of the circumstances that [Petitioner] possessed the specific intent necessary to find him guilty of first degree murder. The facts revealed that after leaving his wife's residence following an argument, [Petitioner] went around to the side of the house and intentionally ripped out the phone lines so she would be unable to summon the police. He then re-entered through a side door and confronted his estranged wife who purportedly taunted him with accusations of his inability to satisfy her sexual needs, and with accolades for the sexual prowess of her former boyfriend, of whom [Petitioner] admittedly was extremely jealous. [He] then grabbed a knife from a kitchen drawer and stabbed his estranged wife nine times.

According to forensic pathologist Dr. Shaun Ladham, there were four wounds to the victim's head, the largest measuring 6.5 by 3.7 centimeters and penetrating the skull covering on the right forehead. N.T., 8/20-23/01, at 150. The blunt force trauma to the head was consistent with [Petitioner's] testimony he had grabbed his wife by the hair and banged her head off of the stove. Id. at 153-154. There were "through and through" stab wounds to both the victim's arm and leg; one wound to the right forearm cut the radial artery, and one wound to the leg that lacerated the popliteal artery and vein, causing arterial spurting (significant blood loss). Id. at 157-158, 162-163.

[Petitioner] used a deadly weapon to stab his wife in the head, face, arms and legs, severing primary arteries and veins, causing massive bleeding and her ultimate demise. We conclude the direct and circumstantial evidence presented was more than enough to support the trial judge's conclusion [that Petitioner] possessed the specific intent necessary to sustain his conviction for first degree murder.

(Answer Ex. 8 at 158-161). Thus, the Pennsylvania Superior Court determined that there was

sufficient evidence to convict Petitioner of first-degree murder.  This conclusion is entitled to a presumption of correctness which Petitioner has failed to overcome.

Petitioner has not demonstrated that, "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324.  The Superior Court's conclusion was neither contrary to, nor an unreasonable application of, clearly established federal law.  Thus, Claim No. 2 should be denied as meritless.

### 5.   Ineffective Assistance of Counsel – Claim Nos. 3, 4, 6, 7 and 9

Petitioner's remaining claims challenge the effectiveness of his trial counsel.

The United States Supreme Court:

> established the legal principles that govern claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.  Id., at 687, 104 S.Ct. 2052.  To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052.  We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that " [t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Ibid.

Wiggins, 539 U.S. at 521.

To satisfy the second prong of counsel ineffectiveness, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 534 (quoting Strickland, 466 U.S. at 694.)  In addition, although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Court noted that " [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

Strickland, 466 U.S. at 697.

The United States Court of Appeals for the Third Circuit has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Werts, 228 F.3d at 204. Thus, the relevant question is whether the decisions of the Pennsylvania courts involve an unreasonable application of Strickland. Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005). See also Taylor v. Horn, 504 F.3d 416, 430 (3d Cir. 2007). That is, a petitioner must show that the state courts "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002).

The question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Strickland, 466 U.S. at 689. The United States Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688).

**(a) Claim No. 3**

In Claim No. 3, Petitioner contends that counsel was ineffective for failing to investigate and assert a diminished capacity defense. This claim was raised in the PCRA petition.

On appeal, the Pennsylvania Superior Court held that:

In his brief, [Petitioner] baldly states that "there was significant evidence showing [he] suffered from one or more psychiatric maladies which negated the existence/formulation of a specific intent to kill at the time of the subject stabbing." [Petitioner's] Brief at 24. [Petitioner] fails to elaborate on what this evidence consisted of and fails to delineate what psychiatric maladies he was suffering from at the time of the killing.

The Pennsylvania Supreme Court has stated that diminished capacity is a

21

limited defense, which does not "exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent." Commonwealth v. Gibson, 951 A.2d 1110, 1131 (Pa. 2008). Further, a criminal defendant asserting diminished capacity must present psychiatric testimony "regarding mental disorders that affect the cognitive functions of deliberation and premeditation necessary to formulate a specific intent." Commonwealth v. Williams, 846 A.2d 110, 111 (Pa. 2004) (internal quotation marks and citation omitted).

> [Petitioner] points to nothing in the record that would substantiate a claim that he was suffering from a mental disorder which would negate his ability to form the requisite intent. The sole evidence in support of [his] claim appears to be a letter and intake documents attached to [his] amended PCRA petition. These documents established that, some six months prior to the murder, [Petitioner] participated in two intake sessions for marriage counseling at Catholic Social Services. During those two sessions [he] claimed depression caused by his marital difficulties. [Petitioner] terminated the counseling after two sessions because the victim was unwilling to participate in marriage counseling. Nothing in these documents demonstrates that [Petitioner] was ever formally diagnosed with any type of depression, was ever treated for depression, or even that he was still depressed some six months later at the time of the murder. In order to prevail on a claim that counsel was ineffective for failing to present a diminished capacity defense, [Petitioner] must show there was a basis for the defense. Commonwealth v. Uderra, 706 A.2d 334, 340-41 (Pa. 1998). As [Petitioner] has failed to do so, this ineffective assistance of counsel claim must fail.

(Answer Ex. 28 at 568-569.)

Thus, the Superior Court concluded that Petitioner failed to demonstrate that counsel's representation fell below an objective standard of reasonableness because he alleged only vague and conclusory statements that some unspecified and speculative testimony might have established his defense. This conclusion is entitled to a presumption of correctness which Petitioner has failed to overcome.

In addition, Respondents argue that Petitioner has failed to demonstrate that he suffered prejudice because, under Pennsylvania law, a specific intent to kill may overcome a diminished capacity defense in any event. Zettlemoyer v. Fulcomer, 923 F.2d 284, 295 (3d Cir. 1991). In this case, Petitioner testified that he pulled the telephone lines from the side of the victim's house

because he was angry with his wife and that he entered the kitchen where the victim verbally and physically attacked him, such that he "went into a rage" and stabbed her with a knife (TT 251-55). However, he did not testify that he was intoxicated, in a dissociative state, suffering from hallucinations or any other infirmity which would have prevented him from forming the malice and intent to kill the victim, although he may have formed these elements in only seconds.

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of <u>Strickland</u>. Therefore, as to Claim No. 3, the Petition should be denied.

**(b) <u>Claim No. 4</u>**

In Claim No. 4, Petitioner argues that counsel was ineffective for failing to investigate or present expert testimony in support of a heat of passion defense. Respondents argue that counsel did in fact investigate and present such a defense at trial. However, Petitioner's claim appears to be that expert testimony was not presented by counsel. Given this, Petitioner must identify the expert whom counsel failed to call and he has not done so.

This claim was presented in his PCRA petition. On appeal, the Superior Court held as follows:

> The record indicates that, in fact, counsel presented a heat of passion defense at trial. The argument section of his brief makes it apparent that [Petitioner's] actual claim is that trial counsel was ineffective for failing to obtain expert testimony to support [his] heat of passion defense. "When a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence." <u>Commonwealth v. Williams</u>, 640 A.2d 1251, 1256 (Pa. 1994). [Petitioner] has not done so; therefore this claim must fail.

(Answer Ex. 28 at 570.) This conclusion is entitled to a presumption of correctness which Petitioner has failed to overcome.

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable

application of <u>Strickland</u>.   Therefore, as to Claim No. 4, the Petition should be denied.

**(c)  Claim No. 6**

In Claim No. 6, Petitioner argues that he was denied the effective assistance of counsel

when Attorney Emmi failed to call character witnesses on his behalf.   He presented this claim in

his PCRA petition.   On appeal, the Superior Court held as follows:

> [Petitioner] has not shown counsel's actual awareness of the witnesses and
> has not shown that their testimony would have been beneficial to his defense.
> [Petitioner] attached to his PCRA Supplement two certifications, signed by PCRA
> counsel, of the proposed character witnesses' testimony. [Petitioner] also attached
> to his PCRA Supplement a certification, signed by PCRA counsel, of the
> proposed testimony of his trial counsel. The certification with respect to trial
> counsel's proposed testimony stated that the only names that [Petitioner] gave
> him of proposed character witnesses were his mother and brother, not the
> individuals currently listed in the PCRA Supplement. Certification of Expected
> Testimony of Louis W. Emmi, Esquire. [Petitioner] does not allege in his brief
> that he ever provided trial counsel with the names of the character witnesses listed
> in PCRA counsel's certification. Thus, the allegations as pleaded are insufficient
> to demonstrate that trial counsel knew or should have known of those witnesses.

> [Petitioner] has also failed to demonstrate that the proposed testimony of
> the character witnesses would have been beneficial to him. The certification for
> purported character witness Joseph Iezzi states that he had known [Petitioner]
> since 1990, and was familiar with his reputation for truthfulness and nonviolence.
> The certification further stated that he had a business relationship with [Petitioner]
> and that Iezzi believed that the victim, "tormented and verbally abused and
> belittled an otherwise stable, happy and good individual." Certification of Joseph
> Iezzi. The certification does not state the extent of Iezzi's relationship with the
> victim. The certification of purported character witness Harry McDonald states
> that McDonald had not become acquainted with [Petitioner] until after the murder
> but that McDonald could testify as to [Petitioner's] reputation for truthfulness and
> nonviolence. Certification of Harry McDonald.

> [Petitioner] contends that Iezzi would testify as to his reputation for
> truthfulness and nonviolence. However, our review of the record demonstrates
> that this testimony would have not been beneficial. [Petitioner] testified in his
> own defense at the trial and admitted that, on occasions prior to the murder he had
> destroyed some of the victim's personal property; that he beat and stabbed his
> estranged wife, inflicting the wound that killed her; and that he lied to police
> during his initial statement.  N.T. 8/[21]/01 at 254-55; 258-59; 266-67; 283-95.

Given [Petitioner's] admission that he had destroyed personal property, stabbed his wife to death, and lied to the police, there is no reasonable probability that testimony of [Petitioner's] truthful and nonviolent reputation in the community would have caused a different result.

[Petitioner] also contends that Iezzi would have testified that the victim tormented and verbally abused [him]. Assuming, *arguendo*, that this testimony would have been admissible, the trial court, which was the finder of fact in this bench trial, specifically noted in its opinion that "testimony from this witness that, in essence, the victim brought this on herself, would not have been helpful to the defendant." Trial Court Opinion dated 2/19/08 at 7.

[Petitioner] allegedly sought to have McDonald testify as a character witness. However, as noted above, McDonald did not become acquainted with [him] until after the murder. There is no reasonable probability that this testimony would have been beneficial to [Petitioner] as the trial court, which was sitting as the finder of fact, stated that the testimony of a witness who only became acquainted with [Petitioner] after the crime and who would testify that [he] had a reputation for nonviolence and truthfulness after he violently attacked his estranged wife and [Petitioner's] admitted act of lying to the police would not have benefited him. Id. at 6-7.

As noted, even if we were to find that counsel was ineffective for any of the above-cited reasons, [Petitioner] could not succeed on these claims as he has failed to show that but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. The instant case was a non-jury trial. In its opinion, the trial court clearly stated that the introduction of character testimony would not have changed its decision. Trial Court Opinion dated 2/19/08 at 6-9. Thus, we find [Petitioner] has failed to show that but for counsel's alleged ineffectiveness the result would have been different.

(Answer Ex. 28 at 571-574.)

Thus, the state court concluded that Petitioner failed to demonstrate that counsel's assistance fell below an objective standard of reasonableness and that there was no support for the contention that Petitioner suffered prejudice as a result of counsel's performance in any event. These conclusions are entitled to a presumption of correctness which Petitioner has not overcome. Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of <u>Strickland</u>. Therefore, as to Claim No. 6, the Petition should be

denied.

**(d) Claim No. 7**

In Claim No. 7, Petitioner argues that he was denied the effective assistance of counsel when appellate counsel failed to preserve trial counsel's failure to challenge the trial court's application of an incorrect legal standard regarding provocation and misconstruction of when his "uncontrollable rage" began. Respondents concede that both trial and appellate counsel failed to preserve the underlying issue, and on direct appeal the Superior Court deemed it waived. (Answer Ex. 8 at 158.) However, they maintain that he has not demonstrated that he suffered prejudice.

Petitioner presented the claim of counsel ineffectiveness in his PCRA petition. On appeal, the Superior Court of Pennsylvania held as follows:

> We have reviewed the record in this matter and find no basis for [Petitioner's] claim that the trial court applied the incorrect legal standard. The trial court correctly stated that the [Petitioner's] passion must "result from that serious provocation [which] is sufficient to excite an intense passion in a reasonable person." N.T. 8/23/01 at 318. Earlier, the trial court stated that "[v]oluntary manslaughter occurs when an individual acts under an intense passion such as anger, rage, resentment or terror that is so strong that it renders him incapable of cool reflection." Id. at 317. We will not fault counsel for failing to litigate and/or preserve a claim of trial court error which lacks merit.
>
> [Petitioner] further claims that trial and appellate counsel were ineffective for failing to litigate and preserve a claim that the trial court "misconstrued" when [his] "uncontrollable rage" began. While not phrased as such, this is, in reality, a claim that counsel were ineffective for not raising a challenge on appeal to the weight of the evidence, since [Petitioner] is challenging the trial court's refusal to credit [Petitioner's] testimony regarding his state of mind on April 14, 2000.

(Answer Ex. 28 at 575-576) (footnote omitted). The court then cited Pennsylvania law holding that an appellate court's review of the weight of the evidence is extremely limited and that the fact-finder must make all credibility determinations, which are not subject to the substituted

judgment of an appellate court on review. The court concluded that "[t]he finder of fact was the trial court which found [Petitioner's] testimony dubious. Because there is no basis to disturb this finding, we will not fault trial counsel for not preserving a weight of the evidence claim or appellate counsel for failing to raise such a claim on appeal." (Answer Ex. 28 at 576-577) (footnote and citation omitted).

Thus, the state court concluded that Petitioner failed to demonstrate that counsel's assistance fell below an objective standard of reasonableness because the trial court applied the correct legal standard to his claim, a standard of Pennsylvania law that this Court is not entitled to review. As the Supreme Court recently reiterated, "we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Waddington v. Sarausad, 129 S.Ct. 823, 832 n.5 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). The Superior Court's conclusion is entitled to a presumption of correctness which Petitioner has not overcome. Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of Strickland. Therefore, as to Claim No. 7, the Petition should be denied.

**(e)  Claim No. 9**

In Claim No. 9, Petitioner contends that appellate counsel failed to raise the issue of the trial court's improper statement that he violated a PFA order at the time of the murder. He raised this claim in his PCRA petition.

On appeal, the Superior Court held as follows:

> [Petitioner] argues that direct-appeal counsel was ineffective for not litigating the error of the trial court's reliance upon a violation of a PFA Order in assessing the degree of guilt. In the May 22, 2003 opinion, written following [Petitioner's] direct appeal of his sentence, the trial court stated that a PFA order

was in effect at the time of the murder. In the February 19, 2008 opinion, the trial court acknowledges that this statement was in error but notes that the May 22, 2003 opinion was drafted some two years after the bench decision finding [Petitioner] guilty and that the bench decision never references or relies on the existence of a PFA. Trial Court Opinion dated 2/19/08 at 2-3; N.T. 8/23/01 at 315-321.

Assuming, *arguendo*, that direct appeal counsel was ineffective for failing to move to supplement the record to correct this error, [Petitioner's] claim still fails because he has not demonstrated that he was prejudiced by this error. As the trial court states, there is nothing in the record that supports a contention that the trial court relied on this factual error in finding [Petitioner] guilty; it is never discussed in the bench decision. N.T. 8/23/01 at 315-321. Further, while this Court adopted the trial court's statement of facts in its February 27, 2004 unpublished memorandum affirming [Petitioner's] conviction, the existence of a PFA is not referenced in our discussion of the merits of [Petitioner's] allegation that the evidence was insufficient to prove intent to kill, which solely discussed the events of April 14, 2000 and the nature of the victim's wounds. Thus, [Petitioner] has not demonstrated that an inaccurate reference to a violation of a PFA had any impact on either the initial finding of guilt or the affirmance of [his] conviction on direct appeal.

(Answer Ex. 28 at 577-578) (footnote omitted).

Thus, the state court concluded that, even assuming that counsel's performance was objectively unreasonable, there was no support for the contention that Petitioner suffered prejudice as a result of counsel's performance because neither the trial court nor the Superior Court relied on the erroneous statement about the existence and violation of the PFA order when deciding the merits of his case. These conclusions are entitled to a presumption of correctness which Petitioner has not overcome. Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of <u>Strickland</u>. Therefore, as to Claim 9, the petition should be denied.

## C. Certificate of Appealability

The decision whether to grant or deny a certificate of appealability is "[t]he primary

28

means of separating meritorious from frivolous appeals." <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983). If a certificate of appealability is granted, the Court of Appeals must consider the merits of the appeal. However, when the district court denies a certificate of appealability, the Court of Appeals can still grant one if it deems it appropriate. 28 U.S.C. § 2253. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Petition does not present a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

Therefore, it is recommended that the Petition for Writ of Habeas Corpus filed by Petitioner Ronald Alan Aiello be denied and, because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Within the time specified in the Notice of Electronic Filing, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Dated: April 25, 2012

cc:    Ronald Alan Aiello
       ET-4948
       SCI Fayette
       Box 9999
       50 Overlook Drive
       LaBelle, PA 15450-1050

       All counsel of record via CM-ECF